IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

V.                                           Criminal No. 1:13-cr-62-HSO-RHW

HECTOR RUIZ RODRIGUEZ et al.

ORDER GRANTING GOVERNMENT'S MOTION [102] FOR JUDICIAL
INQUIRY AND DISQUALIFYING WINIFRED AKINS PASTORINI AS
COUNSEL FOR DEFENDANT HECTOR RUIZ RODRIGUEZ

BEFORE THE COURT is a Motion [102] for Judicial Inquiry, filed by the

United States of America, requesting that the Court inquire regarding an in-person

interview of Defendant Ashley Howell conducted by Winifred Akins Pastorini,

counsel for Codefendant Hector Ruiz Rodriguez, and to inquire regarding a

subsequent telephone conference between Defendant Howell and attorney Daphne

Silverman.  At the time of these communications, a sealed federal indictment was

pending against Howell, charging her with involvement in the same trafficking

conspiracy as alleged against Defendant Rodriguez, Ms. Pastorini's client.  Karl C.

Hightower had been appointed by the Court as Howell's counsel in the federal case,

but Mr. Hightower was not aware of and did not grant permission for Ms. Pastorini

or Ms. Silverman to communicate with Howell.

The Government contends and has provided evidence it submits supports the

conclusion that Ms. Pastorini knowingly violated Mississippi Rule of Professional

Conduct 4.2, which provides:

> In representing a client, a lawyer shall not communicate
> about the subject of the representation with a party the
> lawyer knows to be represented by another lawyer in the

> matter, unless the lawyer has the consent of the other lawyer
> or is authorized to do so by law.

Miss. Rules of Prof. Conduct 4.2.

Ms. Pastorini has filed a Response [137] to the Motion for Judicial Inquiry, and the Government has filed a Reply [139]. On May 13, 2014, the Court held an evidentiary hearing on the Government's Motion. After hearing testimony from Howell and argument from counsel, the Court ordered the Government and Ms. Pastorini to submit briefing regarding whether Ms. Pastorini's communication with Howell warrants Ms. Pastorini's disqualification as counsel for Defendant Rodriguez. The Government and Ms. Pastorini have filed their Responses [163, 164] to the Court's briefing Order [155]. The Government has also filed a Supplemental Response [165], submitting new information that it contends supports the conclusion that Ms. Pastorini continued to interview Howell after learning that Howell was represented by counsel and coerced Howell to cease cooperation with the Government and her Court-appointed attorney. Ms. Pastorini has filed a Reply [166] to the Government's Supplemental Response denying that she engaged in any ethical violations, and she has provided Affidavits of her associate attorney, Son Tran, who accompanied her during the meeting with Howell, to support this conclusion.

Having thoroughly considered the parties' submissions, the record, and relevant legal authorities, the Court finds that based on the totality of the circumstances, no better alternative exists than to disqualify Ms. Pastorini as counsel for Defendant Rodriguez. Such action is required to preserve the integrity of

the proceedings and to prevent a serious potential for a conflict of interest at, and the disruption of, the trial of this matter.

## I. BACKGROUND

On July 23, 2013, Defendant Hector Ruiz Rodriguez and six other Defendants were charged in a one-Count Indictment [3] with conspiring to possess with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana as prohibited by 21 U.S.C. §§ 846 and 841(a)(1)(Count 1).  On December 10, 2013, Ashley Howell was indicted separately for her alleged role in the same conspiracy in Criminal No. 1:13-cr-99-HSO-RHW.  According to the Government, Howell was indicted separately because she was cooperating with the Government and had provided statements about her own involvement in the conspiracy, as well as the involvement of others, including Defendant Rodriguez, whom Howell labeled as a leader in the trafficking conspiracy.  Gov.'s Reply [139] 2.

The Government submits that Howell ceased cooperating with the Government in early April 2014, a couple of months after she was arrested in February 2014.  On April 8, 2014, Howell attempted to fire Mr. Hightower and informed him and the Government that she did not want to talk to the Government and would not be pleading guilty.  The Government discovered that Howell had been interviewed on April 4, 2014, by Ms. Pastorini, counsel for Defendant Rodriguez. The interview occurred at the Stone County Correctional Facility where Howell was being housed due to a probation hold placed on Howell by the State of Louisiana.

Exs. [102-1, 102-2, 102-3].[1]  Howell had been arraigned and granted bond by this Court, but the probation hold prevented her from being released from jail.  A motion to revoke Howell's probation in Mississippi was also pending at the time.  Howell's probation issues were a direct result of her being indicted in this Court in Criminal No. 1:13-cr-99-HSO-RHW.

The Government also learned that another attorney, Daphne Silverman, conferred with Defendant Howell by telephone on April 10, 2014.  Ex. [102-4].  Mr. Hightower represented Howell at the time of the communications between Howell and Ms. Pastorini, and between Howell and Ms. Silverman, but he was unaware of these contacts and did not grant permission for Ms. Pastorini or Ms. Silverman to confer with Howell.

On April 22, 2014, the Government filed the instant Motion [102] for Judicial Inquiry, requesting an inquiry into these questionable communications between Howell and attorneys other than Mr. Hightower that occurred without Mr. Hightower's knowledge or permission.  Also on April 22, 2014, a Superseding Indictment [103] was filed, adding Howell as a Defendant and alleged conspirator in this case.[2]  At her initial appearance in this case on April 30, 2014, Howell informed the United States Magistrate Judge that Ms. Silverman would be representing her

---

[1]It is undisputed that on April 4, 2014, Ms. Pastorini and her associate attorney, Mr. Tran, signed in at the Stone County Regional Correctional Center at 11:40 a.m. to visit Howell and signed out at 1:15 p.m.  Ledger [102-3].

[2]The Indictment against Howell in Criminal No. 1:13-cr-99-HSO-RHW has since been dismissed upon the Government's Motion.

and that she no longer wished for Mr. Hightower to represent her.  Ms. Silverman was not present at that time, so the Court rescheduled Howell's initial appearance in order for Ms. Silverman to appear.

Ms. Silverman has not entered an appearance in this case, and Howell has since changed course.  At Howell's rescheduled initial appearance on May 13, 2014, Ms. Silverman was not present, and Howell informed the Magistrate Judge that Ms. Silverman would not be representing her.  Howell advised that she wished Mr. Hightower to remain as her counsel, and he is presently her counsel.

The evidentiary hearing on the Government's Motion for Judicial Inquiry was also held on May 13, 2014.  At the hearing, Howell testified that she informed Ms. Pastorini at the beginning of a one-and-a-half-hour-long interview that she had been federally indicted, that the case was sealed, and that she was represented by Court-appointed counsel.

> **Ashley Howell**: I told her that I was represented by Mr. Hightower.  She asked me if I still wanted to talk to her.  I didn't have a problem.  I was really lost to my case, period, and I wanted to hear all I could.  I let her know that I was incarcerated, that I had been given a bond by the United States Government, and that I had a hold on me in Louisiana.  She let me know that she could probably do something about that.
>
> **The Government**: Okay. And was there a specific about what she could do about it, or did she just say —
>
> **Ashley Howell**: Someone close to me would send somebody to help me with that.
>
> **The Government**: Okay.  Did you understand that to be a lawyer or –

**Ashley Howell**: Yes, sir.

**The Government**: All right.  Were there any specifics about what lawyer or when they'd contact you or what they would do for you?

**Ashley Howell**: She just told me that it was a friend of hers in Texas and she would mention her name when she contacted me.  Ms. Silverman then contacted me and told me that she was a friend of Windi's.
. . .

**The Government**: Okay.  After they left, you already mentioned that there was contact from Ms. Silverman.

**Ashley Howell**: Yes, sir.

**The Government**: There was a phone call?

**Ashley Howell**: Yes, sir.  More than one.
. . .

**The Government**: All right.  Again, without talking about the substance of this case, what did Ms. Silverman tell you?

**Ashley Howell**: That Ms. Windi had made contact with her and that they were working on getting the financial means to hire an attorney in Louisiana to go before the judge and lift my hold.

**The Government**: Okay.  Concerning your bond over there in Louisiana?

**Ashley Howell**: Yes, sir.

**The Government**: All right.  Did she talk about representing you in this case, in the federal case?

**Ashley Howell**: Yes, sir.

**The Government**: What did she say?

**Ashley Howell**: She just said that Windi had spoken to her

-6-

about it and she was going to make contact with Hector and see if he was going to pay the attorney.

**The Government**: That's what Ms. Silverman said?

**Ashley Howell**: Um-hum.

. . .

**The Government**: Okay. Well, at the – I've forgotten the date – I think it was on April 30th when you came in to be arraigned, you told Judge Walker that you were represented by her.

**Ashley Howell**: Well, due to the fact that I was being pulled in so many different ways, I really didn't know what to do.

**The Government**: Okay.

**Ashley Howell**: And being that I had an opportunity to get out and spend time with my family before I go to prison, I didn't want to mess that up, and that's where she come in.

**The Government**: Okay. So at least on April 30th it was your belief that Ms. Silverman was representing you?

**Ashley Howell**: Yes, sir.

**The Government**: Okay. Did she say something to you, "I'm going to take care of you," or, "I'm going to be your lawyer"?

**Ashley Howell**: Yeah, she basically told me that if I had any problems between now and the time I was released, to let her know and to let her know when I was released. I spoke to her yesterday and let her know that Mr. Hightower was representing me and I was not interested in her –

**The Government**: Okay.

**Ashley Howell**: – representing me.

**The Government**: All right. So you spoke to Ms.

Silverman as recently as yesterday?

**Ashley Howell**: Yes, sir.

Hearing Tr. 10-14.

Ms. Pastorini's account of what occurred is essentially the opposite. Ms. Pastorini maintains that at the time she and Mr. Tran interviewed Howell, she did not know that Howell had been federally indicted and charged with involvement in the same trafficking conspiracy as alleged against Defendant Rodriguez. Ms. Pastorini asserts that she did not know Howell was represented by counsel at the time of the interview. According to Ms. Pastorini, upon meeting Howell, she introduced herself as Defendant Rodriguez's counsel and then asked Howell why she was in jail. Ms. Pastorini maintains that Howell responded that "she was 'on 2 probations for dope cases in 2 different states' and that on one of the probations she had a pending motion to revoke for which she had no bond set [and no attorney to represent her]." Def.'s Brief [164] 8.

Ms. Pastorini submits that she proceeded to interview Howell based on the assumption that Howell was merely a witness in the criminal case against Defendant Rodriguez, as indicated in the discovery produced by the Government. Ms. Pastorini asserts that, before the meeting with Howell occurred, she specifically inquired during a meeting with Government counsel about Howell's status as a witness and also asked whether there would be a superseding indictment in Defendant Rodriguez's case. According to Ms. Pastorini, Government counsel indicated only that they knew where Howell was and that there would not be a

superseding indictment.

Mr. Tran located Howell through a VINELINK search, which revealed that she was incarcerated at the Stone County Correctional Facility in Wiggins, Mississippi. Aff. of Son Tran [137-1] 1-2. Because the federal case against Howell was sealed, a PACER search performed by Mr. Tran prior to the interview did not indicate that a federal indictment was pending against Howell. *Id.* at 1. Ms. Pastorini maintains that she interviewed Howell while "operat[ing] under the misimpression that [Howell] was doing time on a prior conviction." Email [102-2].

According to Ms. Pastorini, it was not until well into the interview, how long she does not estimate, when Howell answered a question regarding another Defendant which revealed that Howell had also been federally indicted as an alleged participant in the same trafficking conspiracy as alleged against Defendant Rodriguez. Ms. Pastorini maintains that she immediately terminated the interview when she learned this information and that Howell was represented by counsel in the federal case. Howell could only remember that her Court-appointed counsel's name was "Casey." Ms. Pastorini attempted to locate "Casey" but ultimately did not make contact with Mr. Hightower, who is also known as "K.C. Hightower." Shortly after the meeting with Howell, Ms. Pastorini emailed Government counsel and disclosed that she had interviewed Howell. Email [102-1]. Ms. Pastorini informed Government counsel that Howell had denied most of the statements attributed to her in a federal agent's report and that Howell had made exculpatory statements regarding Defendant Rodriguez. *Id.*

According to Mr. Tran's Affidavit, "Howell . . . told Pastorini and [him] that the Government's case agent, Krantz, 'was lying' in most of what Krantz had written in her report that was attributable to Howell, and Howell explained how the things Krantz had written in that report were not possible." Aff. of Son Tran [166-2] 3.  At the evidentiary hearing, Howell testified that she lied to Ms. Pastorini about Defendant Rodriguez because she knew that Ms. Pastorini represented Defendant Rodriguez.  Mot. Tr. 11.

Both Howell and Ms. Pastorini agree that, at some point during their meeting, Ms. Pastorini requested that Howell retrieve a copy of the sealed federal indictment against Howell from Howell's cell.  The two agree that prior to being escorted to her cell to retrieve the indictment, Howell told Ms. Pastorini that she had been federally indicted and that she was represented by counsel in the federal case.  Hearing Tr. 19-20.  Ms. Pastorini believed Howell to be mistaken because Howell was not indicted in Defendant Rodriguez's case, and Government counsel had indicated there would be no superseding indictment in Defendant Rodriguez's case.  *Id.* at 20. Howell explained that she and one other person had been charged separately in a case that was under seal.  *Id.*

Ms. Pastorini then asked Howell if she could see the indictment.  Howell testified that this discussion occurred early in the interview.  Ms. Pastorini maintains that it occurred at the end of their meeting, just before she terminated the interview.  An exchange between the two during Ms. Pastorini's cross-examination of Howell at the evidentiary hearing provides:

-10-

> **Windi Pastorini**: And then I asked you, did I not, I asked you, may I ask you why you are were in jail.  And you told me on this – that you were in jail on a motion to revoke; isn't that correct?
>
> **Ashley Howell**: No, ma'am.  I told you I was in jail for Hector Rodriguez's case, and you said you were appalled, that you had no idea that's what I was there for; could you please have a copy of my indictment?  So I was escorted back to my cell to get my paperwork.  I then gave the officer on duty the paperwork to give you copies of it.
>
> **Windi Pastorini**: All right.  But that's my point.  You didn't give me a copy of that indictment when we walked in there.
>
> **Ashley Howell**: I'm sure it's on camera at the jail.
>
> **Windi Pastorini**: Well, I'm sure it is, too.  But it doesn't – you didn't bring me a copy of your indictment with you when you came to talk in the cell.
>
> **Ashley Howell**: No, you had me – you sent me back to get it, if I didn't mind.  And I said, sure, I don't mind.

Hearing Tr. 18.

According to the testimony at the hearing, when Howell returned with her indictment, Ms. Pastorini reviewed the indictment, had a discussion with Howell about who Howell thought the other sealed Defendant was, and tried to determine the name of Howell's counsel, but Howell could not remember his name.  *Id.* at 19-20.  Ms. Pastorini acknowledges that after Howell returned with the indictment, Howell complained about her Court-appointed counsel.

> **Windi Pastorini**: [B]ut after – you told me when you were talking about your, your lawyer, you talked about that you were having, you were having trouble with your lawyer, is that right?

-11-

**Ashley Howell**: Yes, ma'am.

**Windi Pastorini**: But before that, when I first got there, you told me that you didn't have a lawyer on your motion to revoke.  Do you remember telling me that?

**Ashley Howell**: I didn't know that I could get one.  I didn't know that was an option until you told me.

**Windi Pastorini**: And I asked you, I said, You don't have a lawyer?  You're not represented by a lawyer?  And you told me no.

**Ashley Howell**: I told you Mr. Hightower was representing me, but he could not represent me in the Mississippi –in the state case because this was federal.

**Windi Pastorini**: Isn't it a fact that . . . you asked me . . . did you not, did I know a lawyer that I could refer you to that would handle state motions to revoke in Louisiana or Mississippi.  Do you remember telling me that?  How would I know that, Ms. Howell? You told me that.

**Ashley Howell**: Of course I told you that I was – remained in jail and was not released on bond because I had a hold for the state of Louisiana.

**Windi Pastorini**: No.
. . .

**Windi Pastorini**: I didn't send anybody to you.

**Ashley Howell**: You did, Ms. Pastorini.

**Windi Pastorini**: The fact what happened is you asked me if I knew any Mississippi or Louisiana lawyers and –

**Ashley Howell**: And your client paid for it.

**The Court:** Wait, wait, wait.  Let her, let her --

**Windi Pastorini**: Help you on your state case.  My client has not paid for anything other than my representation.

-12-

**Ashley Howell**: Okay.  Well, maybe we should get Ms. Silverman in here to see who paid her.

**Windi Pastorini**: I know nothing about what arrangements were made with Ms. Silverman.
. . .

**Ashley Howell**: . . . Ms. Silverman made contact with a state attorney in Louisiana and hired him through y'all, yes, ma'am.

**Windi Pastorini**: No way. . . .

Hearing Tr. 22-26.

Ms. Pastorini admits that she passed along Howell's name to Ms. Silverman and maintains that she did so because Howell requested help finding an attorney to represent her in the state probation proceedings only.  According to Ms. Pastorini, the conversation regarding Ms. Silverman occurred prior to the point in the interview when Ms. Pastorini learned about the federal indictment against Howell.  Ms. Pastorini denies that her contact with Ms. Silverman had anything to do with the federal case against Howell.  Approximately a week prior to the evidentiary hearing, Howell was released from the Stone County Correctional Facility because the probation hold in Louisiana had been resolved.  Hearing Tr. 8-9.

A week after the evidentiary hearing, two federal agents traveled to the Stone County Correctional Facility to determine if there was surveillance footage of the relevant areas of the jail during the time that Ms. Pastorini interviewed Howell on April 4, 2014.  Gov.'s Supp. Brief [165] 1.  The agents discovered that the footage from that day had been recorded over in the jail's routine course of business.  *Id.*  On

-13-

this same date, one of the agents interviewed a prisoner who was a cellmate of Howell's at the time Howell was in the Stone County Correctional Facility.

According to the agent's report, the cellmate indicated that "two attorneys came to the jail to visit Howell and that, approximately five to ten minutes after leaving the cell, Howell came back to the cell asking for [the folder containing her indictment]. . . . [The cellmate] stated that, after Howell left, it was at least thirty minutes or longer before Howell returned from the interview with the two attorneys." Report [165-1] 3. According to the agent's report:

> Howell told [the cellmate] the attorneys said they would represent Howell and get her another attorney. The attorneys also told Howell that they could make it to where she didn't go to prison. Howell stated that they told her the government was lying and didn't have a case and that the court appointed attorney wasn't doing his job. [The cellmate] stated that Howell also told her the attorneys said they would get another attorney to drop her probation hold in Louisiana so that Howell could get out of jail.

> [The cellmate] further stated that Howell told her the attorneys didn't want her to testify against the other defendant in the case. [The cellmate] stated that Howell told her the defendant's name, which was that of a Hispanic male, but [the cellmate] could not remember the name. [The cellmate] stated that Howell felt threatened by the attorneys and the other defendant but that no direct threat was made to Howell or anyone else. . . . [The cellmate] stated that Howell also told her she didn't know if she could trust these attorneys and she was confused as to what to do.

*Id.*

The Government submits that Ms. Pastorini should be disqualified as counsel for Defendant Rodriguez because she communicated with Howell and coerced her

with promises and favors, despite knowing that Howell was indicted in a federal case directly related to Defendant Rodriguez and despite knowing that Howell was represented by Court-appointed counsel in that case.  Ms. Pastorini denies any wrongdoing.  Both sides have submitted evidence supporting their positions, and Howell testified at the evidentiary hearing.  Mr. Tran did not testify, although he was in the area at the time, and the Court granted Ms. Pastorini's requested recess to allow him time to appear.  Ms. Pastorini later decided not to call Mr. Tran as a witness, concluding instead that Mr. Tran's Affidavit "sa[id] everything he would say" and that Mr. Tran testifying live was "unnecessary."  Hearing Tr. at 29.  Ms. Pastorini has also submitted an Affidavit from her client, Defendant Rodriguez, wherein he seeks to waive any actual or potential conflict of interest that would result from Ms. Pastorini's continued representation of him.

Specifically, Defendant Rodriguez avers that he has "been advised of the possible conflict of interest which might arise from her [sic] representation by Ms. Pastorini . . . . both the issue of counsel being a witness and the issue of counsel having an interest in avoiding a grievance or other criticism . . . ."  Aff. of Hector Rodriguez [164-1] 1.  Defendant Rodriguez is "satisfied that attorney Pastorini has no conflict of interest which would limit or harm [his] defense" and seeks to "knowingly, intelligently, and voluntarily waive any conflict of interest that has arisen and/or may arise from Ms. Pastorini's representation of [him] as [his] attorney."  *Id.* at 1-2.  Defendant Rodriguez submits that disqualifying Ms. Pastorini would cause him substantial hardship.  Ms. Pastorini has been Defendant

Rodriguez's attorney since shortly after his arrest on August 23, 2013.  According to

Defendant Rodriguez, he is very satisfied with Ms. Pastorini's representation, and

they have established a relationship of trust.  *Id.* at 2.  Defendant Rodriguez asserts

that disqualification of Ms. Pastorini will economically hurt him and his family.  *Id.*

## II. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

The Sixth Amendment to the United States Constitution guarantees that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "[A]n element of this

right is the right of a defendant who does not require appointed counsel to choose

who will represent him."  *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006).

"The Sixth Amendment right to choose one's own counsel is circumscribed in several

important respects."  *Wheat v. United States,* 486 U.S. 153, 164 (1988).  The Court

may disqualify an attorney in order to safeguard the integrity of the proceedings.

*United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir. 1979).  The Court may also

disqualify an attorney who has an actual conflict of interest or a serious potential for

a conflict of interest.  *Gonzalez-Lopez,* 548 U.S. at 164.

"[D]isqualification cases are governed by state and national ethical standards

adopted by the court."  *Fed. Deposit Ins. Co. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1311

(5th Cir. 1995).  "An attorney who makes an appearance in any case" in this Court

"is bound by the provisions of the Mississippi Rules of Professional Conduct and is

subject to discipline for violating them."  L. U. Civ. R. 83.5.  Acts which appear to

violate applicable codes of legal ethics, however, "do not confer upon the trial court unfettered discretion to disqualify the attorney selected by a party." *Woods v. Covington Co. Bank,* 537 F.2d 804, 810 (5th Cir. 1976). "An attorney may be disqualified only when there is 'a reasonable possibility that some specifically identifiable impropriety actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice.'" *Kitchin,* 592 F.2d at 903 (citing *Woods,* 537 F.2d at 810, 813).

The Court is granted substantial latitude to refuse a criminal defendant's waiver of conflict of interest in order to safeguard the integrity of the judicial process. *United States v. Sanchez Guerrero,* 546 F.3d 328, 333 (5th Cir. 2008); *United States v. Vasquez,* 995 F.2d 40, 42 (5th Cir. 1993). "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez,* 548 U.S. at 160. The Court must attempt "to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods,* 537 F.2d at 810. "The determination of whether the defendant's Sixth Amendment right overrides the conduct of his attorney is committed to the trial court's discretion." *Kitchin,* 592 F.2d at 903.

B.     Analysis

    1.     Alleged Violation of Mississippi Rules of Professional Conduct 3.7 and 4.2

Even if the Court assumes that Ms. Pastorini did not violate Mississippi Rule of Professional Conduct 4.2 because her actions were not "knowing," the problem remains that what occurred during Ms. Pastorini's meeting with Howell is now a disputed topic of central importance to both the prosecution and defense, and the meeting should never have occurred without Mr. Hightower's permission. The Court cannot conclusively determine whether Ms. Pastorini engaged in unethical conduct. The jury will decide whose version of the meeting is credible. The Court, in this pretrial proceeding, is charged with determining whether there is an actual conflict of interest or serious potential for conflict of interest and whether there is a "reasonable possibility" that Ms. Pastorini engaged in impropriety. *Kitchin,* 592 F.2d at 903. The Court cannot ignore the suspicious circumstances presented here.

Howell, who was cooperating with the Government, stopped cooperating with the Government after communicating with Ms. Pastorini and then communicating with Ms. Silverman. Ms. Pastorini knew prior to her meeting with Howell that Howell had implicated Defendant Rodriguez to the Government as a leader in an alleged drug trafficking conspiracy. Ms. Pastorini knew or reasonably should have known that interaction between Howell and anyone associated with Defendant Rodriguez would invite scrutiny. Nevertheless, even under Ms. Pastorini's version of events, her initial questioning of Howell was not thorough enough to elicit that

-18-

Howell was already represented by counsel in a federal case directly related to Defendant Rodriguez. Ms. Pastorini, for instance, did not ask Howell whether she was represented by counsel in any matter. Ms. Pastorini also did not ascertain at the onset of the meeting that Howell was in the Stone County Correctional Facility because of probation issues stemming directly from her indictment in this Court.

Even if the Court accepts Ms. Pastorini's account of the meeting, a meeting which the record indicates lasted more than thirty minutes and up to an hour,[3] the fact remains that Ms. Pastorini assisted Howell even after learning that Howell was represented by counsel. Ms. Pastorini acknowledges that she passed Howell's name along to Ms. Silverman after the meeting with Howell and after learning that Howell was represented by counsel. The Court questions why Ms. Pastorini would offer any courtesies to Howell, even the courtesy of passing Howell's name along, when doing so would predictably create the impression that Ms. Pastorini was aiding Howell in order to benefit Defendant Rodriguez.

Both sides to this dispute have had an adequate opportunity to populate the record and provide evidence and specifics as to what occurred. The Court finds that based upon the record, there exists a reasonable possibility that Ms. Pastorini continued to confer with Howell after learning that she was represented by counsel

---

[3]Howell indicated that the meeting lasted about an hour and a half. Howell's cellmate's account, contained in a federal agent's report, is that Howell's meeting with Ms. Pastorini lasted more than thirty minutes. Ms. Pastorini and Mr. Tran have offered generalizations on this critical issue of timing, offering statements such as "shortly before the meeting was terminated," "immediately," and "at some point." Def.'s Resp. [137] 11; Affs. of Son Tran [137-1, 166-2].

in a case related to Defendant Rodriguez, in contravention of Mississippi Rule of Professional Conduct 4.2. The Court also finds it reasonably possible that Ms. Pastorini connected Ms. Silverman to Howell in order to benefit Howell and perhaps influence her testimony in this case. This conclusion is further supported by the more specific live testimony at the hearing from Howell about what occurred at the meeting, as opposed to general denials and more vague accounts on critical issues such as timing provided by Ms. Pastorini and Mr. Tran, neither of whom have been subject to cross-examination.

The Court finds that allowing Ms. Pastorini to continue as counsel for Defendant Rodriguez would undermine the integrity of these proceedings. Ms. Pastorini's credibility has been irreversibly injected into this case because of a non-tangential matter. If Ms. Pastorini continues as Defendant Rodriguez's counsel and this case proceeds to a trial, Ms. Pastorini will be before the jury in the role of both advocate and witness. Ms. Pastorini submits that she is not a necessary witness because Mr. Tran was present during the meeting with Howell, and he can testify fully as to what occurred. Ms. Pastorini notes that Mississippi Rule of Professional Conduct 3.7(b) allows a lawyer, under certain circumstances, to act as an advocate in a trial where another lawyer in her firm is likely to be called as witness.

It is Ms. Pastorini's conduct, however, that is in question, not Mr. Tran's. The jury will know that Ms. Pastorini conducted the meeting with Howell, and the jury will be required to assess her credibility. *United States v. Kwang Fu Peng*, 766 F.2d 82, 85 (2d Cir. 1985). Ms. Pastorini will be before the jury as an individual with

personal knowledge of disputed material facts, even if she does not testify. *Id.* If the Government wishes to call Ms. Pastorini as a witness at trial, as it has indicated that it may, to explore the reasons why Howell has given inconsistent statements regarding Defendant Rodriguez, then the Court is of the opinion that the Government should be allowed to do so. Ms. Pastorini should also be allowed to testify as to her version of events, but she should not be permitted to do so as an unsworn witness.

The Court's concern regarding a scenario in which Ms. Pastorini testifies as an unsworn witness is highlighted by the fact that this is what occurred at the evidentiary hearing. Ms. Pastorini cross-examined Howell, but at the same time, denied Howell's account of their meeting and interjected her own account. Ms. Pastorini, in effect, testified but was not subject to cross-examination or explicit impeachment. *Id.* at 83-88. Under the particular circumstances of this case, allowing Ms. Pastorini to proceed in such a manner at trial would undermine the integrity of the proceedings. *Id.* Rule 3.7(b) was not intended to sanction situations in which the examining lawyer would in effect be testifying as an unsworn witness. *Id.* at 87.

2.    <u>Conflict of Interest</u>

The circumstances here also call into question whether Ms. Pastorini's interview of Howell has created an actual conflict of interest or at least a serious potential for a conflict of interest, warranting Ms. Pastorini's disqualification. Unfortunately, the Court must address the issue of whether or not to allow a waiver

of a conflict of interest by Defendant Rodriguez, "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context . . . ." *Wheat,* 486 U.S. at 162. "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.* "These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Id.* "[T]he willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." *Id.*

Courts have found that defense counsel's potential criminal or professional liability for actions in a case, even in the absence of direct proof of wrongdoing, created a conflict of interest warranting defense counsel's disqualification prior to trial. *United States v. Greig,* 967 F.2d 1018, 1026 (5th Cir. 1992); *see United States v. Merlino,* 349 F.3d 144, 151-52 (3d Cir. 2003); *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 133 (3d Cir. 1984); *United States v. Franklin,* 177 F. Supp. 2d 459, 467-470 (E.D. Va. 2001). This is so because defense counsel's representation of his or her client may be curtailed by an interest in minimizing defense counsel's own conduct. *Greig,* 967 F.2d at 1026. Mississippi Rule of Professional Conduct 1.7 provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests . . . ." Miss. Rules of Prof. Conduct 1.7(b).

The serious potential for a conflict of interest, which has been created by the

improprieties here, factors into the Court's decision to disqualify Ms. Pastorini.  Ms. Pastorini could find herself in the position at trial of either choosing to fully cross-examine Howell about what occurred at an interview that should not have taken place given the absence of Mr. Hightower's knowledge and consent, in order to fulfill her obligations to Defendant Rodriguez, thereby potentially exposing herself to ethical or possibly even criminal sanctions, or choosing to "play it safe" and holding back while cross-examining Howell, thereby limiting Ms. Pastorini's own personal or professional exposure but compromising her ethical responsibilities to Defendant Rodriguez.

Defendant Rodriguez's Affidavit, wherein he seeks to waive this serious potential for conflict of interest, should be rejected because the Court "has an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160.  The meeting between Howell and Ms. Pastorini has created "an irreconcilable conflict of interest," justifying the Court declining Defendant Rodriguez's proffered waiver. *United States v. Gharbi,* 510 F.3d 550, 553 (5th Cir. 2007).  Moreover, the purported waiver is insufficient in the Court's view because it does not specifically waive any conflict that might arise in the event Ms. Pastorini elects to limit her cross-examination of Howell, to Defendant Rodriguez's detriment.  Even if Defendant Rodriguez's waiver were specific enough in this regard, the Court still could not accept it given the potential impact such a course of conduct could have on Defendant Rodriguez's Sixth Amendment right to

confront the witnesses against him.

The Court recognizes that Defendant Rodriguez will suffer hardship as the result of Ms. Pastorini's disqualification. Ms. Pastorini is an experienced attorney, and she has represented Mr. Rodriguez for approximately ten months. These facts, however, coupled with a generalized complaint of economic hardship, do not outweigh the Court's interest in preserving the integrity of the proceedings. This case is not so unusual or complex that other counsel of equal competence cannot be located and retained to represent Defendant Rodriguez. The Court finds that Defendant Rodriguez's Sixth Amendment right to choice of counsel must yield to the higher interest of the effective administration of the courts and this Court's responsibility to ensure ethical conduct on the part of lawyers appearing before it.

The Court concludes that the least prejudicial course of action from Defendant's perspective would be to ameliorate any prejudice by allowing a continuance if any new counsel retained by Defendant Rodriguez requests one. Any potential prejudice is further mitigated by the fact that Defendant Rodriguez is and has been represented by local counsel, Luke D. Wilson, who has been involved in this case for at least eight months and will be permitted to continue as counsel of record.

### III.  CONCLUSION

Based on all of the foregoing, the Court will grant the Government's Motion for Judicial Inquiry [102], and Ms. Pastorini will be disqualified as Defendant Hector Rodriguez's counsel in this case. Defendant Rodriguez, if he wishes, may

retain new counsel.  Any new counsel chosen by Defendant Rodriguez must enter an appearance and enroll as counsel on or before June 23, 2014.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [102] for Judicial Inquiry, filed by the United State of America, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, attorney Winifred Akins Pastorini is disqualified from any further representation of Defendant Hector Rodriguez in this matter, and Ms. Pastorini's representation of Defendant Hector Rodriguez is terminated.  Local counsel, Luke D. Wilson, will continue as counsel of record for Defendant Rodriguez.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, any new counsel Defendant Hector Rodriguez wishes to retain must enter his or her appearance and enroll as counsel of record for Defendant Rodriguez on or before June 23, 2014.

**SO ORDERED AND ADJUDGED**, this the 6th day of June, 2014.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE